UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re: | Bankruptcy No. 15-30149 |
| Peter Paul Kowalczyk, | Chapter 7 |
| Debtor. | |

### ORDER OVERRULING CENTRAL TRENCHING'S OBJECTION
### TO IRS PROOF OF CLAIM

**I.    Background**

On April 18, 2015, Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Doc. 1. The Internal Revenue Service and Creditor Central Trenching, Inc. were among five creditors that filed proofs of claim. The IRS's amended claim identifies total tax liabilities of $130,247.45 for tax years 2011-2014, with a priority claim of $119,534.10. Claim No. 1-3. Central Trenching filed a general unsecured claim in the sum of $276,699.29 arising from a 2014 judgment against Debtor and in favor of Central Trenching. Claim No. 6-1.

In October 2015, Bankruptcy Trustee Gene Doeling initiated a lawsuit under 11 U.S.C. § 547, alleging that Central Trenching's levy against $347,743.18 on deposit in Debtor's bank account and the subsequent transfer of funds to Central Trenching was an avoidable preference. See Adv. No. 15-7022. In its answer, Central Trenching admitted receiving the funds, but it claimed the funds related solely to work it performed for Debtor and were impressed with an equitable lien in Central Trenching's favor. Adv. No. 15-7022, Doc. 4.

1

The day before the scheduled trial on the preference action, the Trustee and Central Trenching settled the adversary proceeding.  See Adv. No. 15-7022, Doc. 54.  Pursuant to the settlement agreement, Central Trenching paid the bankruptcy estate $115,000, withdrew its proof of claim and waived the right to share in any distribution to creditors based on prepetition claims or claims arising from payment under the settlement agreement.  Id.  As part of the settlement agreement, the Trustee agreed to dismiss the adversary proceeding against Central Trenching.  Id. at ¶ 4.  The Trustee also stipulated:

> If the priority claim of the IRS as presently filed, is "finally allowed" in an amount less than the present claim amount, the bankruptcy trustee shall refund to Central Trenching, Inc. from Central Trenching's settlement payment the difference between the original amount of said claim and the finally allowed amount of said priority claim.  If any other claims are finally allowed in amounts less than filed and the result is that the estate has funds in excess of the amount necessary to pay creditor claims in full, such excess will be remitted to Central Trenching, Inc.

Id. at ¶ 3.[1]  The Court approved the settlement agreement on October 4, 2017.  See Adv. No. 15-7022, Doc. 56.

On October 9, 2018, Central Trenching filed an Objection to the Proof of Claim of the United States of America, By and Through the Department of Treasury, Internal Revenue Service.  Doc. 121.  In its objection, Central Trenching asserts that the IRS's priority claim in the sum of $119,534.10 is "overstated as a consequence of the failure of the [IRS] to acknowledge and accept the amended 2013 tax return filed by Debtor."  Id.  More specifically, Central Trenching argues that Debtor's tax liability for 2013 should

---

[1] The parties agreed that the "settlement agreement's premise is based in part upon not only Central Trenching, Inc. withdrawing its claims against this estate, but also the prospect that the priority claim of the IRS on file, is overstated."  Id. at ¶ 3.

2

be amended to reduce the IRS's claim from $119,534.10 to an amount not greater than $52,955.89.[2]  Doc. 121.  Central Trenching submitted the amended return to the IRS, but the IRS has not yet revised Debtor's tax assessment.[3]  Consequently, Central Trenching requests that the Court decide the propriety of the IRS's claim by determining Debtor's 2013 tax liability under Code section 505.  See Doc. 144 at 4.

The United States filed a Response to Central Trenching Inc.'s Objection to Proof of Claim.  Doc. 136.  In its response, the United States argues that the Court should overrule Central Trenching's objection for three reasons: first, Central Trenching has not met its burden to come forward with sufficient evidence to rebut the validity of the IRS's claim; second, Central Trenching lacks standing to object; and third, the objection serves no bankruptcy purpose, and therefore, the Court should abstain from considering it.  Id.  In the alternative, the United States requests the Court require Central Trenching to state with particularity the basis of its objection and provide the IRS a discovery period to evaluate the objection.  Id.

---

[2] In its brief, the IRS observed that "it appears that Debtor's amended 2013 return, unlike the original return, reported a large carryback loss from a tax year 2015 Schedule C business.  In order to substantiate this loss, rebut the IRS claim, and establish the correct tax liability, Central Trenching would, at a minimum, likely have to provide documentary support for each item on the 2015 Schedule C (including all of the reported business expenses) and each item on the 2013 return."  Doc. 136 at 13.

[3] The IRS asserted at the December 4, 2018, hearing that the IRS had not yet accepted Debtor's amended tax return and it would not do so until the Court determines whether Central Trenching has standing to challenge Debtor's tax liability.

The Court held a hearing on the objection on December 4, 2018. At the hearing, the Court raised its concern that Central Trenching does not have standing to contest Debtor's tax liability. The Court provided the parties an opportunity to brief this issue.[4]

Central Trenching filed its post-hearing brief on January 11, 2019. Doc. 144. In its brief, Central Trenching argues that it has standing to object to the IRS's proof of claim because it is a "party in interest" under section 502. It requests the Court sustain its objection and "determine the propriety of the IRS's claim" under Bankruptcy Code section 505(a), which empowers a bankruptcy court to determine a debtor's tax liability. Doc. 144 at 3-4.

In its post-hearing brief filed on February 1, 2019, the United States argues that Central Trenching does not have standing to bring a section 505 claim and has not sought derivative standing to bring its objection on behalf of the estate. Doc. 145. It also reasserts its request that this Court abstain from hearing Central Trenching's challenge to Debtor's tax liability. For the reasons that follow, Central Trenching's objection to Claim No. 1-3 is overruled because it does not have standing to challenge Debtor's tax liability under section 505. Even if Central Trenching had standing, the Court would abstain from determining Debtor's tax liability under section 505(a).

---

[4] At the hearing, the Court asked whether Debtor or the Trustee intended to join Central Trenching's objection to the IRS's proof of claim. The Court noted that if either party joined the objection and contested Debtor's tax liability, the issue of standing might be moot. The Trustee indicated he did not intend to join the objection. Debtor has not objected to the IRS proof of claim or joined in Central Trenching's objection.

4

II.     Discussion

    A.     **Legal Standard**

Sections 501 and 502 of the Bankruptcy Code govern filing and allowance of proofs of claim. When a creditor files a proof of claim in accordance with section 501, the claim is deemed allowed unless a party in interest objects. 11 U.S.C. §§ 501(a), 502(a). A properly-filed proof of claim constitutes prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). If a party in interest objects, section 502 outlines the procedure for addressing the objection. Section 502(b) provides:

> [T]he court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
>
> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]

11 U.S.C. § 502(b). When tax liability is at issue, section 505 allows a bankruptcy court to:

> determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

Id. at § 505(a). Bankruptcy courts may also determine whether the debtor is entitled to a tax refund. Id. at § 505(a)(2)(B).

    B.     **Analysis**

        1.     Standing

Before a court may exercise jurisdiction over a case or controversy, it must determine whether the matter is justiciable. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560

5

(1992).  This analysis requires a court to consider whether the party asserting the claim has standing.  Id.  "Standing includes both a constitutional and a prudential component." Jewell v. U.S., 548 F.3d 1168, 1172 (8th Cir. 2008) (quoting Am. Ass'n of Orthodontists v. Yellow Book USA, Inc., 434 F.3d 1100, 1103 (8th Cir. 2006)).  The party invoking federal jurisdiction bears the burden of proving three elements to satisfy constitutional standing:  "First, a party must have suffered an 'injury in fact,' an actual or imminent concrete and particularized invasion to a legally protected interest; second, the injury must be fairly traceable to the challenged action of the defendant; and third, the injury must be redressable by a favorable decision."  Id. (citing Lujan, 504 U.S. at 560). Principles of prudential standing also limit a court's exercise of jurisdiction.  Jewell, 548 F.3d at 1172.  The Supreme Court has listed at least three such principles: "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked."  Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 126 (2014) (citations and quotations omitted).

Central Trenching argues its status as a party in interest is "undisputed."[5]  It maintains that, as a party in interest, it has standing to object to the IRS's proof of claim

---

[5] Generally, courts find that a creditor in bankruptcy is a party in interest for purposes of section 502(a).  See In re of Xenon Anesthesia of Tex., P.L.L.C., 698 F. App'x 793, 794 (5th Cir. 2017) ("One who has filed a proof of claim is considered a party in interest unless the proof of claim is withdrawn or disallowed."); Pascazi v. Fiber Consultants, Inc., 445 B.R. 124, 128 (S.D.N.Y. 2011) ("A creditor is a 'party in interest' under § 502(a) and thus, at least in theory, has standing to object to the claim of another creditor."); 4 Collier on Bankruptcy, ¶ 502.02[2][d] (Alan N. Resnick and Henry J. Sommer, eds., 16th ed. 2014) ("There is no doubt that the phrase 'parties in interest' in section 502(a) includes those who have some interest in the assets of the debtor

6

because standing is "controlled by the plain language of Section 502(a)." See Doc. 144 at 1, 3.

The Bankruptcy Code does not define the term "party in interest." While some courts have ruled that standing as a "party in interest" under section 502 is coextensive with Article III standing, those courts applied the constitutional standing requirements as well as the "party in interest" standards to the litigant who asserted a claim objection. See e.g., Whitely v. Slobodian (In re Mechanicsburg Fitness, Inc.), 592 B.R. 798, 803-04 (Bankr. M.D. Pa. 2018) (observing that "[b]ankruptcy standing is governed by both Article III of the Constitution and the Bankruptcy Code"); see generally, In re Global Indus. Tech., Inc., 645 F.3d 201, 210-11 (3rd Cir. 2011) ("To object to the confirmation of a reorganization plan in bankruptcy court, a party must, in the first instance, meet the requirements for standing that litigants in all federal cases face under Article III of the Constitution. . . . Standing in bankruptcy cases is also governed by [the Bankruptcy Code]." (citations omitted)). These courts defined a "party in interest" as "anyone who

---

being administered in the case. Under such definition, the debtor's creditors are the primary parties in interest."). Central Trenching is no longer a creditor in Debtor's bankruptcy case. Central Trenching initially filed a proof of claim but later withdrew it in conjunction with its settlement of the adversary proceeding. "Without an allowed claim, most courts hold that a party generally does not have the requisite pecuniary interest to be a 'party in interest.'" Maynard Sav. Bank v. Michels (In re Michels), 286 B.R. 684, 690 (B.A.P. 8th Cir. 2002) (quoting In re Larson, 245 B.R. 609, 614 n.1 (Bankr. D. Minn. 2000)). Since Central Trenching no longer holds an allowed claim or ownership interest in estate assets, it would not be entitled to share in estate assets collected by the Trustee (unless the terms of the parties' settlement agreement is triggered—i.e., all creditors are paid in full or Debtor's tax liability is reduced). If the Court or the IRS reduces Debtor's prepetition tax liability, the Trustee will reimburse Central Trenching for the sum of the reduction under the Settlement Agreement. It is not clear whether its rights under this contract qualify Central Trenching as a "party in interest" under section 502.

has a legally protected interest that could be affected by a bankruptcy proceeding," and concluded that this standard coincides with the test for standing. In re Mechanicsburg Fitness, Inc., 592 B.R. at 804; In re Global Indus. Tech., Inc., 645 F.3d at 210-11. The court in In re Global Indus. Tech., Inc. clarified that the "party in interest" standard is not more exacting than the constitutional injury-in-fact requirement; if the party asserting an objection satisfies constitutional standing requirements, it also satisfies the "party in interest" requirement. In re Global Indus. Tech., Inc., 645 F.3d at 210-11.

Courts within the Eighth Circuit describe a party in interest as one with a pecuniary interest that could be adversely affected by the outcome of the proceeding.[6] This standard appears to be less demanding than constitutional standing requirements. Central Trenching offered no authority showing that section 502 either trumps or vitiates constitutional and prudential standing requirements. While it points to the plain language of section 502 allowing a party in interest to object to a proof of claim, Central Trenching cites no cases suggesting that section 502 authorizes a party in interest to object to a claim when it cannot show injury arising from the claim (if allowed) or a connection between the allowed claim and the objecting parties' relationship to Debtor. On the flip side, there is authority establishing that a party asserting an objection under section 502 must qualify as a "party in interest" and meet constitutional standing requirements. See In re Mechanicsburg Fitness, Inc., 592 B.R. at 803-04; In re Mohr, 538 B.R. 882, 884 (Bankr. S.D. Ga. 2015). There is also authority establishing that a party bringing a grievance before a federal court must have a particularized personal

---

[6] See In re Sandpoint Cattle Co., LLC, 556 B.R. 408, 417 (Bankr. D. Neb. 2016); In re U.S. Fidelis, Inc., 481 B.R. 503, 515 (Bankr. E.D. Mo. 2012); In re AFY, Inc., 2011 WL 2313154, at *2 (Bankr. D. Neb. June 8, 2011).

8

stake in each issue it raises—even in a bankruptcy context.[7]  "'An entity may be [a] real party in interest and have standing in one respect while he [sic] may lack standing in another respect.'"  In re A.P.I., Inc., 331 B.R. at 857 (citations omitted); In re Campbelton-Graceville Hosp. Corp., 593 B.R. 663, 667 (Bankr. N.D. Fla. 2018).

Accordingly, the question is not whether Central Trenching is a party in interest who holds a pecuniary interest under section 502, but rather whether Central Trenching is a party in interest who may properly assert a claim objection under section 502 challenging Debtor's tax liability under section 505.  In other words, Central Trenching must show that it is a "party in interest" under section 502 and that it has constitutional and prudential standing to request a determination of Debtor's tax liability under section 505.  See In re Mechanicsburg Fitness, Inc., 592 B.R. at 803-04; In re Mohr, 538 B.R. at 884; see generally In re Global Indus. Tech., Inc., 645 F.3d at 210-11; In re A.P.I., Inc., 331 B.R. at 856.

---

[7] See e.g., In re Campbellton-Graceville Hosp. Corp., 593 B.R. 663, 667-70 (Bankr. N.D. Fla. 2018) (noting that it denied a party's attempt to disqualify creditors' committee counsel for lack of standing and ruling that the same party did not have standing to assert a plan objection because the objecting party had not filed a claim and did not have a stake in the outcome of both proceedings); In re A.P.I., Inc., 331 B.R. 828, 857-59 (Bankr. D. Minn. 2005) ("The coordinated-but-patchwork structure of a [Chapter 11] plan thus merits, and even mandates, analyzing the standing of an objector by its specific stake in each issue that it raises.") (citing In re River Bend-Oxford Assoc., 114 B.R. 111-113 (Bankr. D. Md. 1990)); In re Combustion Engr'g, Inc., 391 F.3d 190, 215 (3rd Cir. 2005) ("As such, we have denied [appellate] standing to parties involved in bankruptcy proceedings 'who, even though they may be exposed to some potential harm incident to the bankruptcy court's order, are not 'directly affected' by that order. Standing is not dispensed in gross, but rather is determined by the specific claims presented.'" (citations omitted)); In re Sea Island Co., No. 10-21034, 2014 WL 3767431, at *3 (Bankr. S.D. Ga. July 30, 2014) ("A party in interest under Section 1109(b) must also satisfy the requirements for standing in order to participate in a bankruptcy matter." (citation omitted)).

Central Trenching claims the IRS overstated Debtor's tax liability.  According to the IRS, Debtor reported a large carryback loss for a 2015 tax year Schedule C business in his amended 2013 return (which Central Trenching filed on his behalf). Doc. 136 at 13.  The IRS maintains that "to substantiate this loss, rebut the IRS claim, and establish the correct tax liability, Central Trenching would, at a minimum, likely have to provide documentary support for each item on the 2015 Schedule C (including all of the reported business expenses) and each item on the 2013 return."  Doc. 136 at 13. Based on the nature of this process, it is apparent that Debtor's tax liability, if incorrect, is either based on Debtor's failure to properly document and report his income and expenses or on the IRS's failure to properly calculate Debtor's tax liability.  The dispute is between the IRS and Debtor or the bankruptcy estate.  If the IRS overtaxed Debtor, the resulting injury is to Debtor and his bankruptcy estate.  Central Trenching's injury—the inability to collect the debt Debtor owes to it—cannot be fairly traced to the "challenged action of the [IRS]," as opposed to "the independent action of some third party not before the court."  Lujan, 504 U.S. at 560 (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976)).  The fact that Central Trenching may bear the ultimate economic burden as a result of the alleged tax overpayment is not sufficient to establish standing.  See Malouf v. U.S., 2012 WL 4480748, at *2 (D. Mass. Sept. 28, 2012).  Central Trenching has not met its burden of showing that it suffered an injury-in-fact that is fairly traceable to the IRS.  It lacks constitutional standing to assert its claim objection.

Principles of prudential standing further limit a court's exercise of jurisdiction. Jewell, 548 F.3d at 1172.  One such principle is the general prohibition on a litigant's

raising another person's legal rights. See Lexmark Int'l, Inc., 572 U.S. at 126 (quoting Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004)). "A litigant must assert his or her own legal rights and interest, and cannot rest a claim to relief on the legal rights or interests of third parties." Jewell, 548 F.3d at 1172 (quoting Powers v. Ohio, 499 U.S. 400, 410 (1991)). In the taxing context, it is a well-established principle of law that third parties lack standing to challenge another's tax liability.[8]

In its claim objection, Central Trenching is asserting Debtor's interest. It seeks to reduce Debtor's tax liability so that it may demand a partial refund from the Trustee pursuant to its settlement agreement. It is resting its claim entirely on the legal rights and interests of Debtor and the bankruptcy estate. Prudential standing principles limit its right to do so. Accordingly, Central Trenching lacks standing to seek a determination of Debtor's tax liability under section 505.

---

[8] See United States v. Cowles-Reed, 584 F. App'x 500, 500–01 (9th Cir. 2014) ("[O]nly the estate itself, and not an interested third party, may contest the tax assessment."); Myers v. United States, 647 F.2d 591, 604 (5th Cir. 1981) ("[A] tax assessment is in the nature of a judgment, the merits of which the taxpayer himself has ample opportunity to contest. . . . In keeping with this view, courts have recognized a general rule that such assessments are not open to collateral attack by non-taxpayers." (citations omitted)); Al-Kim, Inc. v. United States, 650 F.2d 944, 947 (9th Cir. 1979) (noting the lack of support for "any right of third parties to contest the merits of a tax assessment" and concluding that appellants were properly denied such relief); In re Struemke Enterprises, LLC, 2014 WL 4071912, at *4 (D. Minn. Aug. 18, 2014) ("The Struemkes lack standing to challenge Struemke Enterprises' tax liability because they are not the corporate taxpayer."); Malouf v. United States, 2012 WL 4480748 (D. Mass. Sept. 28, 2012) ("Generally, a third party lacks standing and 'is not entitled to contest the tax liability of another.' The fact that a party may bear the ultimate economic burden as a result of payment of a tax does not make that party the taxpayer or establish standing." (internal quotation marks omitted) (quoting Middlesex Sav. Bank v. Johnson, 777 F. Supp. 1024, 1029 (D. Mass 1991)); United States v. Capriotti, 2012 WL 2994244, at *2–3 (E.D. Cal. July 20, 2012) (noting that "only the taxpayers . . . may challenge the tax assessments," and not a third-party co-defendant); United States v. Starke, 2005 WL 3278116, at *2 (M.D. Fla. Sept. 26, 2005) ("It is well settled that a third party lacks standing to contest the tax assessment of another." (citations omitted)).

11

2. <u>Abstention</u>

Even if Central Trenching had established standing to object to the IRS's claim and challenge Debtor's tax liability under section 505, the Court abstains from determining Debtor's 2013 tax liability. The language of section 505 is permissive, not mandatory. 11 U.S.C. § 505(a)(1) ("[T]he court <u>may</u> determine . . .") (emphasis added); <u>In re Northbrook Partners LLP</u>, 245 B.R. 104, 118 (Bankr. D. Minn. 2000). Additionally, 28 U.S.C. § 1334 provides that a bankruptcy court may abstain from hearing a particular proceeding arising in or under or related to a case under the Bankruptcy Code if it is in the interest of justice or in the interest of comity with state courts or respect for state law. 28 U.S.C. § 1334(c)(1).

Courts have identified several factors to consider in determining whether to abstain under section 505(a), including:

> 1. the complexity of the tax issue to be decided; 2. the asset and liability structure of the debtor; 3. the length of time required for trial and decision; 4. judicial economy; 5. the burden on the court's docket; 6. prejudice to the debtor; and 7. potential prejudice to the taxing authority responsible for collection from inconsistent judgments.

<u>In re Zendeli</u>, 2012 WL 1565305, at *2 (Bankr. W.D. Mo. May 2, 2012) (citations omitted); <u>see</u> <u>In re Layher</u>, 2016 WL 3620774, at *3 (Bankr. E.D. Tenn. June 28, 2016); <u>In re Goins</u>, 437 B.R. 372, 375 (Bankr. E.D. Mo. 2010); <u>In re Northbrook Partners LLP</u>, 245 B.R. at 118.[9] Additional considerations include the effect that a choice of forum would have on other creditors' rights and realizations from the bankruptcy estate and

---

[9] The court in <u>In re Northbrook Partners LLP</u> explained that the "judicially-evolved principles of abstention under § 505(a) parallel the bases for 'discretionary abstention'" under § 1334(c)(1), so relying on the general statute is not necessary. 245 B.R. 104, 118 n.25 (Bankr. D. Minn. 2000). Additionally, "the availability of a more particularized rule favored using it, rather than the general one." <u>Id.</u>

12

the relative weight of promoting a "fresh start" for the debtor. In re Northbrook Partners LLP, 245 B.R. at 118 (citing In re Queen, 148 B.R. 256, 258 (S.D.W. Va. 1992)). Some courts have also held that a court may not abstain under section 505(a) "if there is no alternative forum to decide the dispute." In re Layher, at *4 (quoting Hospitality Ventures/Lavista v. Heartwood II, LLC (In re Hospitality Ventures/Lavista), 314 B.R. 843, 864 (Bankr. N.D. Ga. 2004)). Additionally, courts abstain if a determination of tax liability will not benefit the bankruptcy estate. United States v. Kearns (In re Kearns), 219 B.R. 823, 827 (B.A.P. 8th Cir. 1998) rev'd on other grounds, 177 F.3d 706 (8th Cir. 1999); In re Goins, 437 B.R. at 375.

After considering these factors, the Court finds that they weigh in favor of abstention. First, undertaking a section 505(a) analysis will not result in any benefit to the bankruptcy estate. Regardless of the Court's determination of Debtor's tax obligation, no additional assets will be made available for distribution to unsecured creditors with allowed claims. The Trustee filed his final report in September 2018 indicating he fully administered the bankruptcy estate and realized gross receipts of $181,109.16, which includes the $115,000 he recovered from Central Trenching. See Doc. 119. After paying certain fees and administrative expenses, the Trustee reported a balance on hand of $165,200.88 for distribution to claimants. Id. The Trustee's proposed claims distribution (represented in the table below) included paying administrative claims in full; approximately 93 percent of priority claims, including the IRS; approximately 72 percent of secured claims; and none of the $51,928.92 in unsecured claims.

|  | Amount Allowed | Paid as of Aug. 29, 2018 | Proposed Payment | % Paid |
|---|---|---|---|---|

13

| Administrative Claims | $53,882.59 | $7,428.88 | $46,453.71 | 100.00 |
|---|---|---|---|---|
| Priority Claims | $128,159.78 | $0.00 | $118,747.17 | 92.656 |
| Secured Claims | $3,611.05 | $2,611.05 | $0.00 | 72.307 |
| Unsecured Claims | $51,928.92 | $0.00 | $0.00 | 0.00 |

Under the terms of the settlement between the Trustee and Central Trenching, any reduction in Debtor's tax liability will result in a dollar-for-dollar "refund" to Central Trenching. See Doc. 54. Unsecured creditors, who do not receive a distribution under the Trustee's current proposal, would not benefit from a section 505 review. Central Trenching is the only party that could potentially benefit from a reduction in Debtor's tax liability. Such a result is not consistent with the purpose underlying section 505(a). See In re Goins, 437 B.R. at 375 (noting that where there is no benefit to the estate section 505 tax determinations are futile and do not serve the intended purpose of the statute); In re Kearns, 219 B.R. at 827 ("The general unsecured creditors, not the debtor, are the intended beneficiaries of section 505(a)."); In re New Haven Projects Ltd. Liab. Co., 225 F.3d at 288 (citing In re Onandaga Plaza Maint. Co., 206 B.R. 653, 656 (Bankr. N.D.N.Y. 1997)) (internal quotation marks omitted) (The purpose of section 505(a) is "to protect the interests of both debtors and creditors. . . Creditors are entitled to protection from the 'dissipation of an estate's assets[.]'").

Abstention would better serve judicial economy as well. Because there is no benefit to the estate, any time spent litigating the issue in this Court would be an inefficient use of the Court's time and resources. See In re Goins, 437 B.R. at 375 (noting that where no assets would be available for distribution to creditors, "any time spent litigating this dispute in bankruptcy court would be an inefficient use of this Court's time, resources and would unjustifiably burden this Court's docket.").

14

Additionally, the nature of the tax issue is complex.  The federal income tax liability of Debtor and his business, PKS II Industries, is at issue.  According to the IRS, resolving the dispute in this case would require the Court to undertake a fact-intensive review of PKS II Industries' liability for tax year 2013 and determine how the 2013 assessment may impact or offset liability for tax years 2012 and/or 2014.  This is the type of issue more appropriately raised with the IRS or tax court.  See In re Ryckman Creek Res., LLC, 570 B.R. 483, 487 (Bankr. D. Del. 2017) ("Determining the dispute in this case would require this Court to undertake a fact-intensive review of the value of the property and the amount of taxes in question.  Courts have abstained from hearing section 505 requests when the tax issue is fact intensive."); In re Northbrook Partners LLP, 245 B.R. at 119 (abstaining from hearing a section 505 determination because the alternative forum had "long-term experience and substantial expertise in this very different legal world").

Finally, there is no evidence that abstention will result in prejudice to Debtor.  Debtor is not a party to this matter; he has not joined Central Trenching's objection, filed an objection or joined in Central Trenching's request for a determination of his tax liability under section 505.  The IRS asserts that after the tax is paid, Debtor may file an administrative claim for refund or a lawsuit for a tax refund against the IRS.  See Doc. 136 at 13, citing 26 U.S.C. § 7422.  Furthermore, Debtor's "fresh start" is not a consideration here.  Debtor waived his right to a discharge pursuant to 11 U.S.C. § 727(a)(10).  See Doc. 92.  Accordingly, the Court finds it appropriate to abstain from determining Debtor's tax liability under section 505.

### III. Conclusion

The Court considered all other arguments and deems them to be without merit or unnecessary to address. For the reasons stated above, **IT IS ORDERED**:

Central Trenching's Objection to the Proof of Claim of the United States of America, By and Through the Department of Treasury, Internal Revenue Service [Doc. 121] is OVERRULED because it does not have standing to challenge Debtor's tax liability under section 505. Central Trenching's request that the Court determine Debtor's 2013 tax liability under 11 U.S.C. § 505 is DENIED.

Dated: April 17, 2019.

*Shon Hastings*

SHON HASTINGS, JUDGE
UNITED STATES BANKRUPTCY COURT